UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

| | |
|---|---|
| DASHANTE SCOTT JONES, | |
| Plaintiff, | |
| -against- | **INITIAL REVIEW ORDER RE: COMPLAINT** |
| KAREN GRANDE, et al., | |
| Defendants. | 24-CV-701 (VDO) |

**VERNON D. OLIVER**, United States District Judge:

Plaintiff Dashante Scott Jones, a sentenced inmate incarcerated at Corrigan Correctional Center in Uncasville, Connecticut, filed this case *pro se* pursuant to 42 U.S.C. § 1983 against two defendants, Dr. Karen Grande and Nursing Supervisor/Medical Remedies Coordinator Janine Brennan. Plaintiff asserts claims for retaliation, deliberate indifference to medical needs, denial of access to the courts, and denial of communication. He seeks only damages from Defendants in their individual and official capacities.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a government entity or officer or employee of a government entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915(b). The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A.

## I. FACTUAL BACKGROUND

The incidents underlying this action occurred at Corrigan Correctional Center. ECF No. 1 at 4. On January 6, 2024, Plaintiff sent a request to the medical unit to receive his eczema medication. *Id.* at 3. The following day, Plaintiff was told that the medication had been discontinued. *Id.* When Plaintiff asked Dr. Grande why she discontinued his medication, she told him she was aware of his litigation activity and would not provide him any treatment, even if his skin fell off. *Id.* Dr. Grande also told Plaintiff that she had alerted Defendant Brennan and Defendant Brennan would not process any of Plaintiff's grievances. *Id.*

Plaintiff filed a grievance which was rejected by Defendant Brennan for failure to attempt informal resolution and untimeliness. *Id.* at 4. When Plaintiff confronted her, Defendant Brennan admitted that she would not process Plaintiff's grievance because he filed lawsuits against correctional staff. *Id.*

Plaintiff suffers from chronic eczema. *Id.* He alleges that his skin cracks and bleeds on his sheets, he suffers from painful burning and itching sensations all over his body and especially on his testicles, and the condition causes him to lose sleep. *Id.* The only medications that relieve his symptoms are Eucerin lotion or his prescription ointment. *Id.* Instead of providing these medications, Dr. Grande sent him Derma Daily lotion which, Plaintiff alleges, is not an eczema treatment. *Id.* Plaintiff states that when he showers, the soap and water sting as if he had been sprayed with a chemical agent. *Id.* at 3.

## II. LEGAL STANDARD

Under 28 U.S.C. § 1915A, courts must review prisoner civil complaints in which a prisoner seeks redress from a government entity and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary

relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2). Although highly detailed allegations are not required, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility standard is not a "probability requirement" but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). However, the court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678.

With respect to *pro se* litigants, it is well-established that "[p]ro se submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (per curiam) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006)). However, *pro se* litigants are still required to comply with Rule 8 of the Federal Rules of Civil Procedure. *See, e.g.*, *Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004) ("[T]he basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike."). Rule 8 requires that a complaint contain "a short and plain

statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and provide "fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (alteration in original). A statement of claim that is not short and direct places "an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Harden v. Doe*, No. 19-CV-3839(CM), 2019 WL 2578157, at *2 (S.D.N.Y. June 24, 2019) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)) (internal quotation marks and citation omitted).

## III. DISCUSSION

Plaintiff asserts claims for deliberate indifference to medical needs and retaliation against Dr. Grande, and claims for denial of access to the courts, retaliation, and denial of access to grievance procedures against Defendant Brennan. Plaintiff also contends that the fact that Defendant Brennan rejected his grievance violated his First Amendment right to correspond with Dr. Grande's supervisor.

### A. Deliberate Indifference to Medical Needs

Plaintiff alleges that Dr. Grande was deliberately indifferent to his medical need by discontinuing his medication. To state a plausible claim, Plaintiff must allege facts "showing the offending official's 'deliberate indifference to [his] serious medical needs.'" *Thomas v. Wolf*, 832 F. App'x 90, 92 (2d Cir. 2020) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). There are two elements to a claim for deliberate indifference to medical needs. The first element is objective. The inmate must "show that he was 'actually deprived of adequate medical care' by an official's failure 'to take reasonable measures in response to a [sufficiently serious] medical condition.'" *Id.* (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006) (internal quotation marks omitted)). Establishing an objectively serious deprivation requires the

4

court to make two separate inquiries. First, the court must determine whether the inmate "was actually deprived of adequate medical care." *Salahuddin*, 467 F.3d at 279. The medical providers are only required to have "act[ed] reasonably." *Id.* The second inquiry requires the court to determine "whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id.* at 280. Thus, although the objective element sometimes is referred to as the seriousness of the medical need, that is only one factor evaluated in determining the seriousness of the deprivation of medical care. *See id.*

If the claim is for denial of any treatment, the court will consider "whether the inmate's medical condition is sufficiently serious." *Id.* A "sufficiently serious" deprivation can exist if the plaintiff suffers from an urgent medical condition that can cause death, degeneration, or extreme or chronic pain. *See Brock v. Wright*, 315 F.3d 158, 162-63 (2d Cir. 2003); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). A medical condition may not initially be serious, but may become serious because it is degenerative and, if left untreated or neglected for a long period of time, will "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000). The Second Circuit has identified several factors that are "highly relevant" to the question of whether a medical condition is sufficiently serious, including "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects the individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

The second element is subjective. The inmate must show "that the official acted with a culpable state of mind of 'subjective recklessness,' such that the official knew of and consciously

disregarded 'an excessive risk to inmate health or safety.'" *Wolf,* 832 F. App'x at 92 (citations omitted). Allegations constituting negligence or medical malpractice are insufficient to support an Eighth Amendment deliberate indifference claim. *Id.* (citing *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) ("mere negligence" is insufficient to state a claim for deliberate indifference).

Plaintiff alleges that he suffers from severe chronic eczema and that, without medication he suffers pain and bleeding and has difficulty sleeping. "Courts have routinely held that skin conditions such as acne, rashes, and sores do not constitute a sufficiently serious medical need unless they significantly limit the plaintiff's ability to function." *Blanch v. Schiff*, No. 18-CV-838 (NSR), 2021 WL 1177743, at *12 (S.D.N.Y. Mar. 28, 2021) (citing cases). *See, e.g., Hill v. Napoli*, No. 6:09-CV-6546-MAT, 2014 WL 1322476, at *15 (W.D.N.Y. Mar. 31, 2014) ("Even assuming that Plaintiff did have eczema, it was not sufficiently serious that a failure to treat it could be expected to lead to substantial and unnecessary suffering, injury, or death."); *Melendez v. Costello*, No. 6:12-CV-6226(MAT), 2013 WL 5937052, at *7 (W.D.N.Y. Nov. 1, 2013) (improper treatment of eczema, based on allegation that doctor knowingly prescribed ineffective medication that caused condition to worsen two years later, not a serious medical need). As Plaintiff alleges that he experiences pain, bleeding, and loss of sleep as a result of the lack of proper treatment for eczema, the Court will assume, for purposes of initial review, that Plaintiff plausibly alleges facts suggesting that his condition limited his ability to function thereby supporting the objective element of the deliberate indifference test. To ultimately prevail, however, Plaintiff will have to present evidence supporting this element of the deliberate indifference standard.

Plaintiff also alleges that, when he questioned Dr. Grande, she told him that she

discontinued his medication and would provide no treatment because he filed lawsuits against correctional staff. This allegation exceeds negligence or medical malpractice. Plaintiff's claim for deliberate indifference to his medical need will proceed against Dr. Grande for further development of the record.

### B.     Retaliation

Plaintiff contends that Defendants retaliated against him for his litigation activity, Dr. Grande by discontinuing his medication and Brennan by rejecting his grievances. To state a cognizable First Amendment retaliation claim, Plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019).

Filing a lawsuit is considered a protected activity. *See Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (filing a lawsuit or grievance is constitutionally protected activity and will support a retaliation claim); *Stewart v. Ayala*, No. 3:20-CV-1938(CSH), 2022 WL 4356467, at *8 (D. Conn. Sept. 20, 2022) (protected speech or activity includes "filing a lawsuit, an administrative complaint, or a prison grievance"). Thus, Plaintiff satisfies the first element.

The Second Circuit has defined adverse action as retaliatory conduct that would "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Hayes v. Dahlke*, 976 F.3d 259, 274 (2d Cir. 2020) (internal quotation marks and citation omitted). The Second Circuit has held that "a prison official's repeated interference with an inmate's efforts to file grievances might necessitate efforts beyond what is reasonably expected of an inmate with ordinary firmness." *Id.* (internal quotation marks and citation omitted). Plaintiff alleges that Defendant Brennan told him she would not file any of his

7

grievances and allegedly rejected at least two for, what Plaintiff alleges were, improper reasons. At this stage of proceedings, the Court considers the actions taken by Defendant Brennan to plausibly allege adverse action. Plaintiff also alleges that Dr. Grande discontinued medication that he required for eczema, leaving him in pain. Again, the Court considers this allegation to plausibly allege adverse action.

Finally, Plaintiff has alleged that both Defendants told him their actions were taken because he filed lawsuits against correctional staff, satisfying the causation element. Plaintiff's retaliation claims will proceed against both Defendants.

      **C.**      **Denial of Access to the Courts and Grievance Procedures**

Plaintiff contends that Defendant Brennan denied his right to utilize the grievance procedures and also denied his First Amendment right of access to the courts because he cannot file a federal lawsuit without first exhausting his administrative remedies.

"Prisoners have a constitutional right of access to the courts that may not be unreasonably obstructed by the actions of prison officials." *Abrams v. Erfe*, No. 3:17-CV-1570(CSH), 2018 WL 691714, at *16 (D. Conn. Feb. 2, 2018) (citation omitted). The Supreme Court has never held, however, that the Constitution requires state prisons to have formal grievance procedures. In *Riddick v. Semple*, 731 F. App'x 11 (2d Cir. 2018) (summary order), the Second Circuit rejected a state prisoner's constitutional claim regarding prison grievance procedures. The court noted that the prisoner's "claim that defendants violated his due process rights by restricting his access to the prison's grievance procedures confuses a state-created procedural entitlement with a constitutional right.  However, neither state policies nor state statutes create federally protected due process entitlements to specific state-mandated procedures." *Id.* at 13 (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003) (internal

quotation marks and ellipsis omitted)); *see also, e.g., Schlosser v. Manuel*, No. 3:19-cv-1444(SRU), 2020 WL 127700, at *5 (D. Conn. Jan. 10, 2020) ("Inmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or to have a grievance properly processed." (citing cases)).

As there is no constitutional right to prison grievance procedures, Plaintiff fails to allege a plausible constitutional claim for denial of access to those procedures or for denial of access to the courts based on the alleged interference with his access to those procedures. *See Lopez v. McGill*, No. 3:08-CV-1931(CSH), 2009 WL 179787, at *6 (D. Conn. Jan. 21, 2009) ("plaintiff's claim that the grievance restriction directly limits his First Amendment right to petition the government for redress of grievances fails as a matter of law").

Further, a denial of access to prison grievance procedures does not affect Plaintiff's access to the federal courts. Under the Prison Litigation Reform Act ("PLRA"), Plaintiff is required to exhaust available administrative remedies before filing a federal lawsuit regarding prison conditions. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). In *Ross v. Blake*, 578 U.S. 632 (2016), the Supreme Court has identified three circumstances where a court could find that administrative remedies were not available to a prisoner under the PLRA. One such circumstance is when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 644. If, as Plaintiff alleges, Defendant Brennan thwarted his efforts to exhaust his administrative remedies by refusing to process his grievances, he could argue that

administrative remedies were not available to him should Defendants move to dismiss his claims on exhaustion grounds.

Thus, Plaintiff's claims for denial of access to the grievance procedures and the courts are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### D. Right to Communicate

Plaintiff alleges that Defendant Brennan denied his First Amendment right to correspondence by rejecting his grievances. He contends that, if the grievances had been processed, they would have been read by Dr. Grande's supervisor.

Prisoners have a First Amendment right to correspondence. However, that right is not unrestricted. The Supreme Court has acknowledged that, if certain factors are met, the safety and security of the correctional facility may justify restricting that access. *See Thornburgh v. Abbott*, 490 U.S. 401, 415-17 (1989); *Turner v. Safley*, 482 U.S. 78, 89-91 (1987); *see also Hinton v. Pearson*, No. 3:21-CV-863(MPS), 2021 WL 4521994, at *5 (D. Conn. Oct. 4, 2021) ("Prisoners do not have 'a First Amendment right to speak freely and communicate with other inmates and prison officials [] without restriction based on legitimate penological concerns.'" (citation omitted)). Nor do prisoners have a constitutional right to a particular form of communication. *See Mitchell v. Annucci*, No. 9:17-CV-0892(TJM/DJS), 2020 WL 7029136, at *6 (N.D.N.Y. Sept. 3, 2020) (prison officials did not violate First Amendment by declining inmate's preferred method of communication, in that case email).

Here, Plaintiff was not prevented from communicating with Dr. Grande's supervisor. Plaintiff contends that he was unable to present his complaints regarding Dr. Grande to her supervisor because his grievance was rejected. He was not, however, prevented from writing to Dr. Grande's supervisor directly. Thus, his right to correspondence was not violated. Further,

as Plaintiff does not have a constitutional right to grievance procedures or to have his grievance properly processed, he has no constitutional right to have any particular person read his grievance. Plaintiff' First Amendment claim for denial of his right to communicate with the supervisor is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

E.     **Official Capacity**

Plaintiff states that he seeks damages from Defendants in their individual and official capacities. As Defendants are state employees, the Eleventh Amendment bars the recovery of damages against them in their official capacities. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). All claims against Defendants in their official capacities are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

IV.    **CONCLUSION**

All claims for denial of access to the courts and the grievance process and the right to communicate as well as the claims against Defendants in their official capacities are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b). The Court does not afford Plaintiff the opportunity to file an amended complaint to reallege these claims as it had determined that there are no possible factual allegations against Defendants that would permit these claims to proceed.

The case will proceed on the Eighth Amendment claim against Dr. Grande for deliberate indifference to medical needs and the First Amendment retaliation claims against Dr. Grande and Defendant Brennan in their individual capacities only.

The Court enters the following additional orders.

(1)    **The Clerk shall** contact the Department of Correction Office of Legal Affairs to ascertain a current service address for Defendants Grande and Brennan, mail a waiver of service

of process request packet containing the Complaint and this Order to each defendant at the address provided within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth day after mailing. If any defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on the defendant in his individual capacity and the defendant shall be required to pay the cost of such service.

(2) **The Clerk shall** send Plaintiff a copy of this Order.

(3) **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4) Defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(6) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(7) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the

dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write **PLEASE NOTE MY NEW ADDRESS** on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. Plaintiff should also notify Defendants or the attorney for Defendants of his new address.

(9) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(10) The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to Plaintiff.

**SO ORDERED.**

Hartford, Connecticut
April 24, 2024

 /s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge